**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MICHAEL J. TULCHINER,

Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

Defendant.

Civil Action No. 25-cv-4078

JURY DEMAND

## COMPLAINT

COMES NOW Plaintiff, Michael J. Tulchiner (hereinafter "Plaintiff"), and would show unto this Honorable Court the following:

## JURISDICTION AND VENUE

1. This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this court has jurisdiction.

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## PARTIES

3. Plaintiff is currently a resident of Nassau County, New York.

4. Defendant, The Northwestern Mutual Life Insurance Company, was at all relevant times a Wisconsin corporation, authorized, licensed, and doing business in the state of New York as an insurance carrier admitted to do business in New York, including offering for sale insurance products, such as the policies of disability income insurance it sold to Plaintiff, for his benefit, as

more fully set forth, below. Defendant does business from its primary location in Milwaukee, Wisconsin.

5. Defendant issued Policy Numbers D1269917, D1288142, D1340149, D1501460, and D18090049 (the "Policies") to Plaintiff and the Policies remains in force today. The Policies are individual disability policies.

6. Defendant is obligated to pay benefits and determine eligibility for benefits under the Policies it issued to Plaintiff.

## FACTS

7. Defendant issued Policy Numbers D1269917, D1288142, D1340149, D1501460, D18090049 (the "Policies") to Plaintiff. (Copies of the Policies are attached hereto and incorporated herein as Exhibit 1-5)

8. Plaintiff has at all times paid all the premiums due from him and otherwise performed all conditions required of him to maintain the Policies in force.

9. Prior to his disability, Plaintiff was self-employed as a real estate attorney in New York. His practice has always been real estate law.

10. On or about March 1, 2023, Plaintiff's mental health declined to a point at which he was no longer able to continue working.

11. Because of his severe depression, anxiety, and other mental health conditions, Plaintiff entered inpatient treatment on January 29, 2024 where he stayed until his discharge on April 1, 2024.

12. Since approximately March 1, 2023, Plaintiff has been completely unable to perform the principal duties of his regular occupation or the duties of any gainful occupation due to his conditions, including Generalized Anxiety Disorder, Generalized Depressive Disorder,

Antisocial Personality Disorder, Attention-deficit Hyperactivity Disorder, and related cognitive impairments.

13. Plaintiff timely applied for disability benefits under the Policies.

14. In support of Plaintiff's application for disability benefits, Defendant received medical records from Plaintiff's psychiatrist, Dr. Nancy Tice, psychologist, Dr. Norman Miller, licensed clinical social worker, Mr. Bruce Goldman, and from Caron of Florida, Inc., the inpatient treatment facility Plaintiff treated at.

15. Also in support of Plaintiff's claim, Defendant received a medical treatment summary letter from Mr. Goldman and Attending Physician Statements from Dr. Tice and Dr. Miller.

16. Dr. Tice also submitted a letter dated January 22, 2024, stating that Plaintiff "is diagnosed with Attention-deficit hyperactivity disorder, predominantly inattentive type and Anxiety disorder, unspecified." She also stated that, "Mr. Tulchiner is facing challenges in fulfilling his legal duties due to mental health reasons."

17. Dr. Miller also submitted a letter dated January 21, 2024, reporting that Plaintiff, "due to his ICD-10 diagnosis of Attention Deficit/Hyperactivity Disorder-Predominantly Inattentive Presentation-Severe-F90.0 and his Unspecified Anxiety Disorder- F41.9; in my opinion is not able to practice law and adequately represent his clients."

18. While receiving residential treatment at Caron of Florida, Plaintiff underwent Quantitative Electroencephalogram (QEEG) diagnostic examination on February 6, 2024. According to the QEEG report, the results provide support for Plaintiff's primary symptomatic concerns of anxiety and memory issues. QEEG analysis such as swLORETA neuroimaging power and connectivity measures identified key regions of the brain both cortical and sub cortical

associated with primary symptoms with significant dysregulation. The inefficiency in performance in these regions is considered to play a substantial role in the maintenance of these symptoms.

19. Also during his treatment at Caron of Florida, Plaintiff underwent a neuropsychological assessment, the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS). The results confirm that his Attention functions fell within the Low Average range (16th percentile) and that his auditory working memory/sustained auditory attention fell within the Low Average range (9th percentile).

20. Defendant reviewed Plaintiff's disability application and supporting documentation, and partially approved his claim for benefits under one policy and denied benefits under all other policies by letter dated May 22, 2024.

21. Defendant only found that Plaintiff qualified for total disability benefits under his disability overhead expense policy, number D1890049, for the period of his inpatient treatment, January 29, 2024 through April 1, 2024.

22. The other individual disability policies, D1269917, D1288142, D1340149, and D1501460 all have a 91-day Beginning Date, which means that Plaintiff must remain disabled for 91 days before benefits begin to accrue.

23. Because Defendant's consulting psychologist only found support for totally disabling limitations during his inpatient stay of 64 days, Defendant found that Plaintiff did not have support for 91 days of disability and denied his claim for benefits under the remaining policies.

24. Additionally, Defendant reasoned that Plaintiff's symptoms of anxiety appear to be related to situational stressors and not an underlying psychiatric condition/diagnosis despite the

objective test results, including the QEEG and RBANS reports, indicating underlying conditions causing his psychological and cognitive impairments.

25. Plaintiff filed a timely appeal of Defendant's decision to deny benefits.

26. In support of his appeal, Plaintiff provided Defendant with supplemental evidence in support of his claim, including updated medical records and treatment letters from his treatment providers. The medical records document that Plaintiff is compliant with his treatment regimen, including pharmaceutical interventions and consistently attending monthly appointments with his psychiatrist, Dr. Tice, and weekly appointments with his therapist, Bruce Goldman, LCSW.

27. Also documented by the medical records from Dr. Tice is the fact that Plaintiff has reported his medical conditions to the New York Bar Association. According to her office visit note dated October 18, 2024, Plaintiff is awaiting a decision by the Bar Association regarding a temporary suspension of his bar license for medical reasons.

28. As of the date of this filing, Plaintiff is still awaiting a decision by the Bar Association regarding a temporary suspension of his bar license for medical reasons.

29. Plaintiff also submitted a medical opinion from Dr. Tice who reported that Plaintiff has only a Fair ability to demonstrate reliability and Poor abilities to:

- Follow work rules;
- Deal with the public;
- Deal with stress of ordinary work;
- Persist at assigned tasks;
- Relate to supervisors and co-workers;
- Work at a consistent pace for acceptable periods of time; and
- Timely complete tasks commonly found in the work settings.

30. Plaintiff also submitted a medical opinion form from his therapist, Mr. Goldman, who reported limitations mostly consistent with those reported by Dr. Tice. Additionally, Mr. Goldman described that Plaintiff

> suffers from anxiety, depression, attention deficit disorder and overwhelming feelings of shame, guilt and inadequacy. This combination of illnesses and feelings makes it difficult for him to focus, stay on track and prioritize activities. He often is distracted, procrastinates, and avoids tasks that create negative feelings.

31. To better understand how his conditions and symptoms impact his cognitive abilities and endurance, Plaintiff underwent a neuropsychological evaluation with Dr. Leo Shea III, Ph.D., on December 9, 2024. Plaintiff submitted the results of this evaluation in support of his appeal. The testing revealed "severely reduced performance on tests of higher- level reasoning and executive functions, which are critical to the daily performance of his work in real estate law." Dr. Shea concluded that Plaintiff's "does not possess the capacity to meet the daily complex demands of his professional job or any job with similar responsibilities, diversity, and complexity."

32. Defendant denied Plaintiff's appeal by letter dated March 4, 2025.

33. In its denial letter, Defendant indicated that it relied on the opinions of its consulting neuropsychologist and psychiatrist who reviewed Plaintiff's records and determined that there is insufficient evidence to support a totally disabling psychiatric condition beyond his residential treatment period.

34. Defendant also indicated that its consulting neuropsychologist was able to support partial medical limitations from the date of the neuropsychological testing, December 9, 2024, to present.

35. Defendant reasoned that it did not have data supporting Plaintiff's cognitive complaints or specific testing for deficits prior to the date of his neuropsychological evaluation with Dr. Shea.

36. Defendant also indicated that its consulting psychiatrist did not find Plaintiff's documented symptoms rise to the level of being limited in any capacity beyond what was previously supported (i.e., the period of residential treatment, January 29, 2024 to April 1, 2024).

37. Defendant concluded, "[w]hile we can recognize a period of partial limitations from December 9, 2024 [the date of the neuropsychological evaluation], Mr. Tulchiner is not gainfully employed and he therefore, does not meet the policy provisions to be considered partially disabled and eligible for benefits."

38. Plaintiff appealed on April 30, 2025, providing even more information and evidence supporting Plaintiff's entitlement to the Policies' full benefits.

39. Plaintiff submitted another medical opinion form completed by his treating psychiatrist, Dr. Tice, who reviewed the results of his neuropsychological evaluation and confirmed that she agreed with the findings based on her own evaluation and treatment of Plaintiff.

40. Additionally, Dr. Tice reported that the restrictions and limitations as set forth in the neuropsychological evaluation are consistent with Plaintiff's functionality in and around January 1, 2024, through the present. Dr. Tice's opinion supports that Plaintiff's level of cognitive functioning has not changed significantly from when he had to stop working to present.

41. To assist Defendant with its review of Plaintiff's claim, Plaintiff also submitted a vocational evaluation report by vocational expert, Joseph Atkinson, MS, CRC, who interviewed Plaintiff and reviewed his vocational information, the results of his neuropsychological evaluation, and the opinions of his providers. Based on this information and his experience as a rehabilitation counselor, Mr. Atkinson opined that Plaintiff cannot perform the principal duties of a real estate attorney due to the restrictions and limitations found by Dr. Shea and Dr. Tice.

42. Mr. Atkinson's report explains:

> As indicated in the DOT, his occupation requires cognitive functioning in the top 10th percentile. His abilities fall well below this level. Therefore, the testing supports the conclusion that Mr. Tulchiner is unable to perform his occupation and is disabled according to the plan. He cannot perform the primary functions of the work for two reasons; although he can perform the tasks of

> drawing up some less complicated documents, due to his interpersonal relation issues, he cannot deal with people in a manner necessary to market his services and, negotiate fees, and get himself retained. He would have to work for another attorney firm with no expectation of client development. However, he also does not have the capacity to work with supervisors and coworkers including other attorneys and support staff. In addition, due to issues of focus and concentration, he would not be able to meet the required deadlines with any work. Real estate transactions are subject to tight deadlines due to contingencies, changing interest rates, and move in/out needs. He would not be consistent and reliable in meeting these deadlines.

Mr. Atkinson added that "His demonstrated processing speed at the 42nd percentile indicates he would take in and process information much slower than a typical attorney, who does so at the 90th percentile based on the general learning aptitude indicated in the DOT." For these reasons, Mr. Atkinson reports that Mr. Tulchiner "would not meet the required productivity level of an attorney for performing any tasks expected of an attorney."

43. Nevertheless, Defendant issued a final denial on June 11, 2025, re-affirming its previous denials.

44. Plaintiff has suffered and continues to suffer from a total disability so as to qualify him for benefits as defined in the Policies and/or as defined under New York law.

45. Defendant never had Plaintiff examined in-person.

46. Defendant has delayed the investigation and payment of Plaintiff's claim.

47. Plaintiff has not received the full requisite of benefits due under the Policies.

48. Defendant continues to deny any coverage under the terms of the Policies.

49. Plaintiff relied on the income he contracted with Defendant to receive upon his disability and has incurred significant consequential expenses and damages as a result of Defendant's failure to pay these benefits.

50. Plaintiff's consequential damages include: being forced to surrender three life insurance policies for money to live on and incur penalties and taxes; being forced to take out a home equity line of credit for money to live on and having to repay interest on it at $1,500 per month; being forced to borrow from two friends; being unable to pay his debts and having his credit rating drop precipitously; losing the use of the denied disability benefits during the period those benefits were withheld; and being forced to retain counsel and the attorney's fees associated with contesting the denial of his claim.

51. Defendant knew or should have known that its failure to tender Plaintiff's disability benefits would have a substantial economic impact on Plaintiff and that he would be forced to incur consequential damages such as, or similar to the consequential damages sustained by the Plaintiff.

**COUNT I**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

52. At all relevant times, Plaintiff paid all premiums due and fulfilled all contractual duties and obligations required of by the Policies. Plaintiff was an insured within the Policies. Plaintiff did nothing to disqualify himself for coverage within the Policies.

53. Plaintiff has suffered and continues to suffer from a total disability so as to qualify him for total disability benefits as defined in the Policies and/or as defined under New York State law.

54. Defendant, under the terms of the contracts of insurance, are indebted to Plaintiff for the disability benefits due under the terms of the Policies.

55. Despite the Policies being in full force and effect, Defendant has failed to timely, and adequately investigate Plaintiff's claims and now refuses to pay benefits due to Plaintiff related to his disability, instead, wrongfully denying his claim.

56. Defendant has failed and refused to honor its common law and contractual obligations under the policies of insurance that were issued to the Plaintiff for the benefit of Plaintiff.

57. Defendant breached its contracts by failing to timely pay disability benefits owed to Plaintiff.

58. As a direct and proximate result of Defendant's actions in handling this claim, Plaintiff has suffered, and continues to suffer, monetary loss and damages.

**COUNT II**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

59. Under the terms of the Policies, premiums are waived for each month while Plaintiff remains Disabled, beginning 91 days after he first became Disabled.

60. Plaintiff has been Disabled under the terms of the Policies since March 1, 2023, and has produced to Defendant compelling medical and vocational evidence demonstrating that he remains totally disabled under the terms of the Policies.

61. By reason of the foregoing, Plaintiff is entitled to the waiver of the Policy premiums in the future, and a refund of all premiums paid by Plaintiff from May 31, 2023, through the date of final judgment in this action, together with interest thereon.

**COUNT III**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

62. Defendant has a duty under the Policies to investigate, bargain for, and settle claims in good faith.

63. It was reasonably foreseeable to Defendant that many of its insureds depend on total disability benefit payments to replace their income.

64. Armed with this knowledge, Defendant should have been more diligent in making sure its terminations and denials of disability were proper.

65. Defendant ignored the medical evidence and opinions of Plaintiff's treating psychiatrist, Dr. Tice, therapist, Bruce Goldman, LCSW, and examining neuropsychologist, Dr. Shea.

66. Defendant selectively relied on evidence that favored denial, while ignoring evidence that favored approval.

67. Defendant claimed that it considered and relied on the reviewing opinions of its consultants, but Defendant failed to provide those opinions to Plaintiff for review and response.

68. Through its actions, Defendant treated Plaintiff as an adversary, rather than a beneficiary to which it owed duties of good faith and fair dealing.

69. Defendant violated its duty of good faith and fair dealing.

70. As a proximate result of Defendant's decision to deny Plaintiff's claim for total disability benefits, Plaintiff has suffered great financial damage and associated stress/emotional issues.

71. Plaintiff was forced to hire an attorney, and incur legal fees for assistance with his appeal of Defendant's adverse determination

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant Plaintiff the following relief in this case:

1. That the Court enter judgment in favor of Plaintiff and against Defendant and order the Defendant to pay disability income benefits to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled from March 1, 2023, forward as well as consequential damages.

2. That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment.

3. For the amount of all premiums paid under the Policies from March 1, 2023, through the final date of judgment in this action, together with interest thereon.

4. That the Court clarify and declare that Defendant is obligated to pay Plaintiff disability benefits in the future as required by the Policies.

5. That the Court clarify and declare that Defendant is obligated to waive Plaintiff's premiums in the future as required by the Policies;

6. That the Court order Defendant to pay Plaintiff's attorneys fees and costs.

7. Plaintiff further demands a jury to hear his case.

8. For such other relief as may be deemed just and proper by the Court.

Dated this 24th day of July, 2025.

Respectfully submitted,

BY: /s/ *Audrey C. Dolmovich*
Audrey C. Dolmovich (TN BPR# 035972)*
Kaitlyn E. Barciszewski (TN BPR# 041568)*
Eric Buchanan & Associates, PLLC
*Attorneys for Plaintiff*
414 McCallie Avenue
Chattanooga, Tennessee 37402
(423) 634-2506
(423) 634-2505 (fax)
adolmovich@buchanandisability.com
kbarciszewski@buchanandisability.com

**Pro hac vice applications to be submitted promptly*

&

BY: /s/*Scott M. Riemer*
Scott M. Riemer, Esq.
Riemer Hess LLC
*Attorneys for Plaintiff*
110 East 42nd Street, Suite 1418
New York, New York 10017
Phone: 212-297-0700
Fax: 212-297-0730
sriemer@riemerhess.com