# Exhibit

# 1

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

PRESIDENT AND C.E.O.     SECRETARY

**IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE**

Please read the copy of the application attached in this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

Bruce Martin, CLU, Special Agent
Suite 3700
1114 Avenue of the Americas
New York, NY 10036-7791
Office: (212) 921-0986

Northwestern Mutual Life

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

QQ.DI

Northwestern Mutual Life®

| | | | |
|---|---|---|---|
| INSURED | Michael J Tulchiner | AGE AND SEX | 34 Male |
| POLICY DATE | January 11, 1998 | POLICY NUMBER | DI 269 917 |
| PLAN | Disability Income | | |

Exclusions and Limitations--See Section 3 and the attached Agreement(s) for Limitation of Coverage.

QQ.DI

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. GENERAL TERMS AND DEFINITIONS**

Insured and Owner. Terms on schedule of Benefits and Premiums. Regular Occupation. Total Disability. Partial Disability. Licensed Physician. Consumer Price Index.

**SECTION 2. BENEFITS**

Disabilities covered. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime Benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 3. EXCLUSIONS AND LIMITATIONS**

**SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75**

**SECTION 5. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Limits on when you may start a legal action.

**SECTION 6. OWNERSHIP**

Rights of Owner. Assignment as collateral.

**SECTION 7. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 8. THE CONTRACT**

Changes. Time limit on certain defenses. Change of plan. Conversion to level premium disability insurance. Dividends. Definition of dates. Termination.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

# BENEFITS AND PREMIUMS

Date of Issue - November 11, 1997

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| Disability Income | $ 3,000 | see page 3A | 32 Years |
| Future Increase Benefit Effective until January 11, 2002 - Renewable | | | |

Renewal of coverage beyond age 65 may require an increase in the premium. See Section 4.

A monthly premium, plus an ISA administrative charge, is payable on January 11, 1998 and on the 11th day of every calendar month after that. The monthly premium equals the annual premium multiplied by .0856.

The first monthly premium is $89.88. This includes a premium of $52.90 for coverage from the Date of Issue to the Policy Date.

The premium for this policy is on a nonsmoker basis for Occupation Class 6A.

This policy is issued on a classified basis with extra premium included.

| | |
|---|---|
| BEGINNING DATE | 91st day of disability in the first 180 days after the start of disability. |
| MAXIMUM BENEFIT PERIOD | 60 months of benefits or to January 11, 2030 if less, but not less than 24 months of benefits. |
| INITIAL PERIOD (Coverage for the Insured's own occupation) | 60 months of benefits or to January 11, 2030 if less, but not less than 24 months of benefits. |

OWNER Michael J Tulchiner, The Insured

STATE OF ISSUE New York

| | | | |
|---|---|---|---|
| INSURED | Michael J Tulchiner | AGE AND SEX | 34 Male |
| POLICY DATE | January 11, 1998 | POLICY NUMBER | DI 269 917 |
| PLAN | Disability Income | | |

Exclusions and Limitations--See Section 3 and the attached Agreement(s) for Limitation of Coverage.

# BENEFITS AND PREMIUMS

Date of Issue - November 11, 1997

| Disability Income | FULL BENEFIT PER MONTH |
|---|---|
| Annually Renewable Premium | $ 3,000 # |

# THIS AMOUNT IS CONVERTIBLE TO LEVEL PREMIUM UNTIL JANUARY 11, 2023.

TABLE OF ANNUAL PREMIUMS

| FOR POLICY YEARS BEGINNING JANUARY 11, | DISABILITY INCOME ANNUALLY RENEWABLE |
|---|---|
| 1998 | $ 432.00 |
| 1999 | 450.30 |
| 2000 | 473.10 |
| 2001 | 495.90 |
| 2002 | 518.70 |
| 2003 | 541.80 |
| 2004 | 569.10 |
| 2005 | 596.70 |
| 2006 | 628.50 |
| 2007 | 660.60 |
| 2008 | 697.20 |
| 2009 | 733.80 |
| 2010 | 784.20 |
| 2011 | 852.90 |
| 2012 | 935.10 |
| 2013 | 1,026.60 |
| 2014 | 1,131.90 |
| 2015 | 1,287.30 |
| 2016 | 1,470.30 |
| 2017 | 1,699.20 |
| 2018 | 1,973.70 |
| 2019 | 2,257.20 |
| 2020 | 2,513.40 |
| 2021 | 2,701.20 |
| 2022 | 2,760.60 |
| 2023 | 2,792.70 |
| 2024 | 2,806.20 |
| 2025 | 2,806.20 |
| 2026 | 2,806.20 |
| 2027 | 2,806.20 |
| 2028 | 2,806.20 |
| 2029 | 2,806.20 |

| | | | |
|---|---|---|---|
| INSURED | Michael J Tulchiner | AGE AND SEX | 34 Male |
| POLICY DATE | January 11, 1998 | POLICY NUMBER | DI 269 917 |
| PLAN | Disability Income | | |

Exclusions and Limitations--See Section 3 and the attached Agreement(s) for Limitation of Coverage.

Page 4
is blank

# SECTION 1. GENERAL TERMS AND DEFINITIONS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 gives information about or the meaning of several terms that are used in the policy.

## 1.1 INSURED AND OWNER

The Insured and Owner are named on page 3.

## 1.2 TERMS ON SCHEDULE OF BENEFITS AND PREMIUMS

The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under this policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date. Days of disability due to different causes will be accumulated to satisfy the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 2.7.

**Initial Period.** (Coverage for the Insured's own occupation.) During the Initial Period the definition of total disability is based on the Insured's regular occupation at the time the disability starts. The Initial Period starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3.

## 1.3 REGULAR OCCUPATION

The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be "the regular occupation."

If the Insured is exclusively engaged in:

- a medical or dental specialty for which board certification is available; or
- the specialty of trial law

that specialty is the "regular occupation."

## 1.4 TOTAL DISABILITY

Until the end of the Initial Period, the Insured is totally disabled when unable to perform the principal duties of the regular occupation. After the Initial Period, the Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation.

If the Insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

## 1.5 PARTIAL DISABILITY

The Insured is partially disabled when:

a. the Insured is unable:
   - to perform one or more but not all of the principal duties of the regular occupation; or
   - to spend as much time at the regular occupation as before the disability started;

b. the Insured has at least a 20% Loss of Earned Income; and

c. the Insured is gainfully employed in an occupation.

During a period of partial disability following the Beginning Date, the Proportionate Benefit may be payable. Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:

- the Insured is unable to perform one or more principal duties which accounted for at least 20% of the time the Insured spent at the regular occupation before the disability started; or
- the Insured has at least a 20% loss of time spent at the regular occupation.

## 1.6 LICENSED PHYSICIAN

Licensed Physician means a physician, other than the Insured, who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, Licensed Physician means psychiatrist or licensed doctoral level psychologist other than the Insured.

## 1.7 REGULAR CARE OF A LICENSED PHYSICIAN

Regular Care of a Licensed Physician means personal care and attention appropriate to the condition causing disability. This care must be at such intervals and frequency as will lead to the Insured returning to the principal duties of the regular occupation.

If the Company determines that Regular Care of a Licensed Physician would be of no further use to the Insured, the requirement of such care will be waived.

### 1.8 CONSUMER PRICE INDEX

A consumer price index is used to determine the Indexing Factor as described in Section 2.4 of this policy. The consumer price index used in this policy is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U"). The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company and the insurance supervisory official of the state to serve the same purpose.

The "consumer price index for the year the disability started" is the CPI-U for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

### 1.9 SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT

This policy may have the SSS Benefit. If so, the schedule of Benefits and Premiums will show the Full Benefit, Beginning Date and Maximum Benefit Period applicable to the SSS Benefit. The terms and conditions of the SSS coverage are set out in the SSS Benefit.

## SECTION 2. BENEFITS

### 2.1 DISABILITIES COVERED BY THE POLICY

Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the Regular Care of a Licensed Physician during disability;
- the disability results from an accident or sickness; and
- the disability is not excluded under Section 3.

### 2.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

### 2.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable at the end of the month for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period. When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

### 2.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by Loss of Earned Income and divided by Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \times \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice Of Benefit Amount For First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change the choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 2.5.

**Loss Of Earned Income.** This is:

- the Insured's Base Earned Income; less
- the Insured's Earned Income for the month for which the Benefit is claimed.

The Loss of Earned Income must be caused by the disability for which claim is made.

**Earned Income.** For an Insured who is an employee, Earned Income is:

- the sum of salary, bonuses and commissions paid to the Insured as reported for federal income tax (FIT) purposes; plus
- amounts earned by the Insured which would have resulted in current taxable employee compensation, but instead were contributed by the Insured to a benefit or retirement plan; less
- unreimbursed employee business expenses as reported by the Insured for FIT purposes.

For an Insured who is an owner of a sole proprietorship or a partnership interest, Earned Income is based on amounts as reported for FIT purposes on individual and business tax returns and is:

- the share of gross income from each business, earned by the Insured or others under the Insured's supervision or direction; less
- the Insured's share of normal and customary business expenses. (However, any form of compensation for the Insured's spouse is not deducted as an expense unless the spouse was a paid employee working at least 30 hours per week in the business during the 30 day period before the start of disability.)

For an Insured who is an owner-employee of a corporation or who has Earned Income from more than one source, Earned Income is calculated using all five items of Earned Income as described above.

For amounts in the current or recently ended tax year which have not yet been reported on FIT returns, the calculations above will be based on amounts that will be reported for FIT purposes. Earned Income is determined before the deduction of federal, state and local income taxes. Earned Income does not include forms of unearned income such as: benefits from disability coverage, from deferred compensation, or from retirement plans; dividends; interest; or annuity payments.

At the time a claim for a Proportionate Benefit begins, the Owner must choose:

- to have all items of Earned Income, as described above, credited to the period in which they are earned (accrual basis); or
- to have all items of Earned Income, as described above, credited to the period in which they are received (cash basis). However, income received during a period of disability for work performed prior to the start of the period of disability will not be included in income during the period of disability.

The accounting basis chosen by the Owner will be used to determine both Base Earned Income and Earned Income during a period of disability.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or
- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

## 2.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to continuous full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 2.4. A Loss of Earned Income is used to determine the amount of Transition Benefit to the extent that it is caused by the disability from which the Insured has recovered.

A disability occurring while the Transition Benefit is payable is considered as a continuation of the previous disability.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

## 2.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 2.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows the 60th birthday of the Insured;
- the total disability continues without interruption to the policy anniversary that follows the 65th birthday of the Insured; and
- the total disability continues without interruption beyond the policy anniversary that follows the 65th birthday of the Insured.

## 2.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, the Insured will be considered totally disabled if the Insured incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 3. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

## 2.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 2.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 2.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

## 2.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 2.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is considered a separate disability if:

- Full, Proportionate, or Transition Benefits were, but no longer are, payable for the earlier disability; and either
  - the cause of the later disability is not medically related to the cause of the earlier one; or
  - the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 12 months (or 6 months if this contract has a 24 month or 60 month Maximum Benefit Period) after Full, Proportionate, or Transition Benefits cease being payable for the earlier one.

All other disabilities are considered to be a continuation of the prior disability.

# SECTION 3. EXCLUSIONS AND LIMITATIONS

### 3.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- starts within two years after the Date of Issue; and
- results from an accident that occurred or from a sickness that existed within two years before the Date of Issue

if the accident or sickness was not disclosed or was misrepresented in the application.

A sickness is considered to have existed or an accident to have occurred if:

- symptoms were present that would have caused a prudent person to seek diagnosis, care or treatment; or
- medical advice or treatment was recommended or received from a doctor.

### 3.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

There will be no benefits for a disability or loss which results from the Insured committing or attempting to commit a felony.

### 3.3 LIMITATION REGARDING PREGNANCY AND CHILDBIRTH

For a disability caused by normal pregnancy or childbirth, the Beginning Date will be the 91st day of disability or the Beginning Date shown on page 3, if later. This limitation does not apply to a disability caused by complications of pregnancy or childbirth.

Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. For purposes of this policy, one example of a complication of pregnancy is a non-elective caesarian birth. Examples of conditions that are not complications include false labor, fatigue, and morning sickness.

# SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if:

- the Insured is actively and gainfully employed at least 30 hours per week; and
- premiums to renew this policy are paid.

This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed, benefits are provided only for total disability. The total disability must be one:

- which occurs while this policy is in force; or
- which commences within 30 days of an accident which occurred while this policy was in force, provided the disability results from the accident.

The premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 5. CLAIMS

## 5.1 CLAIM FOR POLICY BENEFITS

**Notice Of Claim.** To start a claim for benefits, written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. Mail sent to the Home Office should be addressed as follows:

  The Northwestern Mutual Life Insurance Co.
  Attn: Disability Benefits
  720 East Wisconsin Avenue
  Milwaukee, Wisconsin 53202

**Proof Of Loss.** For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary and relevant to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits along with other information as may be required by the Company from time to time. The Company will also need to be provided information, which the Company deems relevant to the claim, as described below under "Other Requirements."

**Claim Forms.** The Company will furnish claim forms for an initial written proof of loss within 15 days after receiving notice of claim. These forms will need to be completed by the Owner, the Insured and the Insured's physician. If these forms are not furnished within the 15 day period, this initial written proof of loss may be made by giving a written statement of the nature and extent of the disability.

The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.

**Written Proof Of Loss.** Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.

**Other Requirements.**

- **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain information. These authorizations must be signed by the Insured and returned to the Company.
- **Medical Examination.** The Company may have the Insured examined by a health care practitioner.
- **Personal Interview.** The Company may conduct a personal interview of the Insured.
- **Financial Examination.** The Company may have the financial records of the Insured or the Owner examined.

Any examination or interview will be performed:

- at the Company's expense;
- by a health care practitioner, interviewer or financial examiner of the Company's choice; and
- as often as is reasonably necessary in connection with a claim.

## 5.2 TIME OF PAYMENT OF CLAIMS

When the Company has received satisfactory proof of loss and other information as required by section 5.1 and the Company has determined that benefits are payable, the Company will pay benefits on a monthly basis. The balance of any unpaid benefits will be paid promptly upon termination of the claim.

## 5.3 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to the Owner's estate.

## 5.4 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of loss has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 6. OWNERSHIP

## 6.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or the Owner's successor or transferee.

## 6.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 6.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 6.2.

# SECTION 7. PREMIUMS AND REINSTATEMENT

### 7.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund At Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

### 7.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After The Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. In cases where the Company requires an application for reinstatement and evidence of insurability, the policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days from the date the Company receives the cost to reinstate.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and
- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

### 7.3 ACTIVE DUTY WHILE A MEMBER OF THE RESERVES OR NATIONAL GUARD

If the Insured is a member of a reserve component of the armed forces of the United States, including the National Guard, the policy may be suspended, upon written request, during a period of active duty. The Company will refund that portion of any premium paid beyond the date of such suspension.

The policy may be reinstated as of the date of the Insured's release from active duty upon receipt by the Company of a written request and the pro-rata premium for coverage until the next premium due date. The written request must be received no later than 60 days after the Insured's release from active duty; and the Insured must have served no more than 5 years of active duty.

The Company will not attach new provisions or limitations to the policy at the time of reinstatement except as to a condition that arose during the period of active duty if the condition has been determined by the secretary of veterans affairs to be a condition incurred in the line of active duty.

# SECTION 8. THE CONTRACT

### 8.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

### 8.2 TIME LIMIT ON CERTAIN DEFENSES

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement, except a fraudulent misstatement, in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 3.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and
- is not excluded from coverage by an Agreement for Limitation of Coverage.

### 8.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and
- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

### 8.4 CONVERSION TO LEVEL PREMIUM DISABILITY INSURANCE

The Owner may convert the Annually Renewable Premium (ARDI) coverage, if any, shown on page 3 to a level premium, noncancellable and guaranteed renewable disability income insurance policy. The conversion may be done on or before the the conversion date shown on page 3. No evidence of insurability will be required. The right to convert is not available if the premiums are being waived for this policy.

A portion of the ARDI coverage may be converted, subject to conditions set by the Company.

The new policy will be in the form and have the same terms as policies being issued by the Company at the time of conversion. The terms available for the new policy will be based on the classification of risk of this policy. The new policy will have the following terms:

- the amount of the Full Benefit will be the amount of benefit converted;
- the Maximum Benefit Period and Initial Period will not be longer than the Maximum Benefit Period and Initial Period of this policy;
- the Beginning Date will be any Beginning Date offered at the time the new policy is purchased that is not earlier than the Beginning Date of this policy; and
- the new policy will be issued with additional benefits which are on the converted coverage and which are then available to new Insureds.

**Limitations Of Coverage.** The new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**Premium.** The premium for the new policy is determined as of its date of issue by:

- the Company's premium rates then in effect in the state where the Insured then resides;
- the Insured's age on the policy date of the new policy;
- the plan and amount of insurance issued; and
- the classification of risk of this policy.

**Cost Of Conversion.** The cost of conversion will be the first premium for the new policy less any dividend and premium credit for the benefit amount converted.

**Effective Date.** The new policy takes effect on the date the Company receives the application or the cost of conversion, whichever is later.

### 8.5 MISSTATED AGE OR SEX

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age or sex.

### 8.6 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the State of Issue on that Date are amended to conform to such statutes. The State of Issue is shown on page 3.

### 8.7 DIVIDENDS

This policy will receive its share, if any, of the divisible surplus of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or
- paid to the Owner when premiums are being waived.

### 8.8 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

### 8.9 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 4). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

# FUTURE INCREASE BENEFIT (FIB)

## 1. THE BENEFIT

The Company will annually index the Full Benefit on each policy anniversary to reflect increases in consumer price levels, subject to the terms and conditions in this Benefit. The increased coverage which results from the indexing will remain in effect for as long as the policy is in force and premiums are paid for the increased Full Benefit. Any benefit that is based on the amount of the Full Benefit will be increased in proportion to the increase in the Full Benefit.

**Increases Deferred During Disability.** Increases will not be made during a period for which premiums are waived. However, increases that would have been made during a period of disability but for the limitation in the prior sentence will take effect after premiums cease to be waived. The increases will be in effect for a separate disability suffered by the Insured (see Benefit For Separate Disabilities section of the policy). The period for which premiums are waived includes any period for which the Transition Benefit is payable.

## 2. PREMIUM INCREASE

The premium for this policy will increase on the same date as each increase in the Full Benefit takes effect. The amount of each premium increase will be based on the increase in the Full Benefit and the premium rates as shown on page 3A.

When the Full Benefit is increased, the Company will provide an amendment to the schedule of Benefits and Premiums.

## 3. HOW AN INCREASED FULL BENEFIT IS DETERMINED

The Full Benefit for a policy year will be the Full Benefit for the prior policy year multiplied by the Indexing Factor. For purposes of determining the amount of the increase, the "Full Benefit" will be the sum of the disability income Full Benefit and any Social Security Substitute Full Benefit. The increase will be subject to a minimum and maximum described below. The Indexing Factor is:

- the consumer price index for the prior calendar year; divided by
- the consumer price index for the next prior calendar year.

Thus, the new Full Benefit equals:

$$\text{prior year Full Benefit} \times \frac{\text{consumer price index for the prior calendar year}}{\text{consumer price index for the next prior calendar year}}$$

**Minimum And Maximum Increase.** The Full Benefit for a policy year will not be less than 104% of the Full Benefit for the prior policy year. The Full Benefit for a policy year will not be more than 108% of the Full Benefit for the prior policy year.

**Consumer Price Index.** The "consumer price index for the prior calendar year" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the month of September of the prior calendar year. The "consumer price index for the next prior calendar year" is the CPI-U for the month of September for the calendar year before the prior calendar year.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company and the insurance supervisory official of the state to serve the same purpose.

## 4. WHEN INCREASES IN THE FULL BENEFIT OCCUR

Except for increases that are deferred during a period for which premiums are waived, an increase in the Full Benefit will occur on each policy anniversary if the Owner has the right to receive increases at that time. The right to receive increases starts on the first policy anniversary and continues until:

- the Owner refuses two increases; or
- the last date on which this Benefit is in effect, as stated on page 3, if earlier.

The Owner can refuse to accept an increase:

- by not paying the increased premium resulting from this Benefit; or
- by sending a written notice to the Home Office of the Company before the increase takes effect.

If increases have stopped due to two refusals of increases, or because the Insured did not meet the Company's financial underwriting standards when this Benefit was previously renewable, the Owner will regain the right to receive further increases starting on the earlier of:

- the date, if any, this Benefit may be renewed under Section 5 of this Benefit, provided the Insured meets the Company's financial underwriting standards that are then in effect and the renewal date is not later than the first policy anniversary following the 55th birthday of the Insured; or
- the first policy anniversary after the Insured meets all of the Company's standards of insurability that are then in effect. These standards include the Insured's health, activities, and occupation as well as the Insured's financial condition.

**5. RENEWAL**

Page 3 shows the last date on which this Benefit is in effect. However, if it is stated on page 3 that this Benefit is renewable, the Owner may renew this Benefit for subsequent five-year periods. In no event will the Benefit be in effect after the first policy anniversary after the 64th birthday of the Insured.

To renew this Benefit, the Insured must meet the Company's financial underwriting standards that are then in effect. These standards include:

- the Insured's earned and unearned income;
- the Insured's net worth;
- the amount and type of disability coverage that the Insured has or for which the Insured may be eligible after a qualifying period of employment; and
- the Company's issue limits.

Satisfactory evidence of insurability must be provided to the Company no more than 90 days and no less than 45 days before the anniversary on which this Benefit is to be renewed.

For purposes of Section 8.2 of the policy, the Date of Issue for increases during any renewal of this Benefit will be the policy anniversary on which this Benefit is renewed.

**Conditional Renewal Excluded.** This Benefit will not be in force if the policy is in force under the Conditional Right to Renew Total Disability Coverage to Age 75.

**6. TERMINATION**

The Future Increase Benefit will terminate on the earliest of the following dates:

- the date the policy terminates;
- the date the Home Office receives the Owner's written request; or
- the first policy anniversary that follows the Insured's 64th birthday.

John M. Bremer

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

# AGREEMENT FOR LIMITATION OF COVERAGE

INSURED: Michael J Tulchiner

DI 269 917

As of the Date of Issue, it is agreed that this policy is amended by the following limitations:

Except for a disability caused by a fracture, no benefits will be provided under this policy for disability resulting from any disease or disorder of the cervical vertebrae (including the intervertebral discs and complicating radiculitis), including complications thereof, medical or surgical treatment therefore, or complications of such treatment.

1/30/98
Date

Michael Tulchiner
Signature of Applicant

John M. Bremer

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

UND# 482

LLD 200

17-0713 (Rev. 2/90)

ATTACH THIS SIGNED DUPLICATE TO THE POLICY

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

QQ.DI

Countersigned by ______________________________
Licensed Resident Agent

Northwestern Mutual Life®